IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 12-01127 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT JOHN |
| | ) | RIDGELY TUCKER'S MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN RIDGELY TUCKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT JOHN RIDGELY TUCKER'S
MOTION FOR COMPASSIONATE RELEASE**

**I.     INTRODUCTION.**

In 2013, Defendant John Ridgely Tucker entered a guilty plea to one count of producing child pornography. This court sentenced Tucker to 240 months in prison. He has served almost 100 months of that sentence.[1] He is incarcerated at FCI Seagoville, and the Bureau of Prisons says his projected release date is November 21, 2029.

Tucker now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The primary basis for his motion is the COVID-19 pandemic. Tucker contends that his age (65) and his hypertension make him vulnerable to complications if he contracts COVID-19. After considering Tucker's age, his medical condition,

---

[1] The Government contends that Tucker has served approximately 87 months of his sentence. However, he has been incarcerated since October 10, 2012, ECF No. 24, PageID # 124, and thus has served a little more than 98 months of his sentence.

the time remaining on his sentence, and his history, this court concludes that Tucker has not demonstrated that extraordinary and compelling circumstances warrant the requested reduction in his sentence.

**II.      ANALYSIS.**

Tucker's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence

2

reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements.  *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Tucker has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

Tucker submitted an administrative compassionate release request to the warden of his prison on September 29, 2020, more than 30 days before he filed this motion.  ECF No. 26-4, PageID # 182.  The Government is not contesting Tucker's satisfaction of the exhaustion requirement.  ECF No. 32, PageID # 258.  Accordingly, this court finds that Tucker has fulfilled the first requirement of § 3582(c)(1)(A).

### B. This court has discretion in determining whether extraordinary and compelling reasons justify a reduced sentence.

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.  This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts

when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments. *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

      **C.**    **Tucker has not demonstrated that extraordinary and compelling circumstances justify his early release, or that the requested reduction would be consistent with Sentencing Commission policy statements.**

Tucker contends that extraordinary and compelling circumstances justify his early release here. He relies primarily on the risks he faces if he contracts COVID-19, which

4

is present at FCI Seagoville,[2] where he is housed.  At 65 years old, Tucker is at risk of a severe illness if he contracts COVID-19.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html#:~:text=The%20greatest%20risk%20for%20severe,intensive%20care%2C%20or%20a (last visited January 20, 2021).  Moreover, Tucker has been diagnosed with hypertension, which may increase the likelihood of a severe illness.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited January 20, 2020).  The coronavirus therefore poses real risks to Tucker.

Those risks may be mitigated, however, by Tucker's history.  Last July, Tucker was diagnosed with COVID-19.  ECF No. 29, PageID # 214.  Tucker was "not severely immunocompromised and did not have a severe illness requiring hospitalization."  *Id.*  That raises two issues.

First, because he did not develop complications during his July infection, it is not clear that he is likely to develop complications if reinfected.  *See* Richard L. Tillett, et al,

---

[2] The BOP reports that three inmates and one staff member have tested positive for COVID-19 at FCI Seagoville. www.bop.gov/coronavirus (last visited January 21, 2020). According to the BOP, 1255 inmates and 45 staff members have recovered from the virus.  *Id.*  Four inmates have died.  *Id.*

*Genomic Evidence for Reinfection with SARS-CoV-2: a Case Study*, Oct. 12, 2020, https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(20)30764-7/fulltext (noting that, in a reinfection of a Nevada man, his symptoms were more severe, but also recognizing that in other cases of possible reinfection, there was no difference in the severity of symptoms).  There is no way for this court to know whether Tucker's test was a false positive, but, if the test was accurate, it appears that he may have survived the virus without developing serious complications.

Second, this court cannot conclude that there is a substantial risk that Tucker will be reinfected.  There is anecdotal evidence that a handful of people have been reinfected with COVID-19.  See *id.* (discussing a Nevada man who appears to have been reinfected with COVID-19).  The CDC recognizes that "cases of reinfection of COVID-19 have been reported but are rare."  https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited January 20, 2021).

It appears that individuals may have at least some immunity against future infection, although the strength and length of that immunity has not been established.  *See* Dennis Thompson, *COVID-19 Immunity Might Last at Least 8 Months* (Dec. 31, 2020), https://consumer.healthday.com/1-4-covid-19-immunity-might-last-at-least-8-months-study-2649661098.html.  Because the virus is so new, it is impossible to know with complete certainty

exactly how long immunity lasts.  *Id.*  But a study completed last month suggests "that we will have rather durable immunity" because the body retains immunological memory that allows it to quickly produce new antibodies to respond to a second infection.  *Id.*  That study is consistent with "with the observation that documented second infections have been, to this point, really quite rare."  *Id.*  Some experts therefore consider it unlikely that an individual will be infected a second time.  Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times, July 22, 2020, https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html.

        This court is acutely aware that, at this point, no one completely understands how COVID-19 operates.  This court is therefore in no position to make a definitive determination about Tucker's risk of reinfection, but the absence of severe symptoms when he did contract the disease and the potential for having some form of immunity cannot be ignored in determining whether Tucker establishes extraordinary and compelling reasons warranting a reduction in her sentence.

        The court next turns to an examination of factors set forth in § 3553(a).  Three considerations are particularly significant.  The first is the gravity of Tucker's offense.  Tucker, among other things, used children who had particular reason to trust him to produce child pornography.  ECF No. 24,

PageID # 127-131.  The 240-month sentence imposed by this court was necessary to reflect the seriousness of the offense and provide just punishment for the offense.  *See* 18 U.S.C § 3553(a)(2).

Second, this court must consider the amount of time Tucker has served.  Tucker has been in custody since October 10, 2012, and his projected release date is November 21, 2029.  ECF No. 24, PageID # 124; ECF No. 26-3, PageID # 180.  Even if credit for good behavior is taken into account, Tucker has served only about half of his prison sentence.

Third, this court considers Tucker's record while in prison.  While Tucker has completed several educational courses, in 2013, he was disciplined twice, once for "being insolent to [a] staff member" and once for "phone abuse-disrupt[ive] monitoring."  ECF No. 26-7, PageID # 202.  More recently, in 2019, Tucker was disciplined for punching another inmate.  *Id.*  In short, Tucker's disciplinary record includes matters of concern.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having balanced the seriousness of Tucker's crime, the amount of time remaining on his sentence, his conduct while incarcerated, and the totality of the medical information he has submitted, this court determines that the reasons raised by

8

Tucker, while important, do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence.  This court reaches the same negative conclusion in examining whether the requested reduction in sentence would be consistent with applicable policy statements issued by the Sentencing Commission.[3]

**III.    CONCLUSION.**

Tucker's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, January 21, 2021



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Tucker*, Cr. No. 12-01127 SOM; ORDER DENYING JOHN RIDGELY TUCKER'S MOTION FOR COMPASSIONATE RELEASE

---

[3] Tucker suggests that the Eighth Amendment prohibits his continued incarceration.  ECF No. 26-1, PageID # 171 (citing *Helling v. McKinney*, 509 U.S. 25 (1993)).  In *Helling*, the Court held that "deliberate indifference to serious medical needs of prisoners violates the [Eighth] Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  509 U.S. at 32 (quotation marks omitted).  Tucker does not establish deliberate indifference.